

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Mary Fraser,
Plaintiff,

    v.

Concord General Mutual
Insurance Company,
Progressive Casualty
Insurance Company,
Universal Underwriters
Insurance Company,
    Defendants.

No. 2:06-CV-210

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
(Paper 39, 45, 49)

Plaintiff Mary Fraser filed this action against Defendants Concord General Mutual Insurance Company ("Concord"), Progressive Casualty Insurance Company ("Progressive"), and Universal Underwriters Insurance Company ("UU"), seeking damages for the Defendants' failure to pay the full amount of underinsured motorist coverage following a motor vehicle accident in which Fraser was injured. The case is presently before this Court on cross-motions for summary judgment filed by Fraser, Concord, and Progressive.

I. Background

The facts in the case are not in dispute. On July 7, 2002, Plaintiff Mary Fraser was seriously injured in a two-vehicle collison in Bridport, Vermont. At the time of the accident, Fraser was a passenger in a 2002 Dodge pickup owned by Foster Motors, Inc. of Midddlebury, Vermont and driven by Dale Tucker.[1]  Richard Finke and Robert Ray, who were in the other car, were also injured in the accident. On the date of the accident, Dale Tucker had **liability** insurance coverage available to him in the following amounts under the following policies:

> 1. $500,000 per person/per accident under Fraser's Progressive's Commercial Auto Policy No. CA 0-17-65-392-0;
>
> 2. $25,000 per person/$50,000 per accident under Foster's Universal's Commercial Auto Policy No. 9205895; and,
>
> 3. $25,000 per person/$50,000 per accident under Tucker's AIG Insurance Policy No. 7406630.

Thereafter, Progressive sought Fraser's permission to settle Finke's claim. Fraser consented[2], and Progressive

---

[1] The pickup was a loaner from Foster while Fraser's vehicle was being repaired.

[2] On January 30, 2004, Progressive confirmed that its UM/UIM coverage was available to Fraser, and Fraser gave permission to settle Finke's claim on the understanding that Fraser would receive UM/UIM coverage. (Mot. for Summ. J. Statement of Undisputed Facts Ex. 3.)  Fraser's amended complaint asserts new

2

then paid $500,000 to Finke, exhausting the liability portion of the Progressive Policy. Fraser received $0 from Progressive. Universal paid $25,000 to Finke, $6,350 to Ray and $18,650 to Fraser. AIG paid $25,000 to Fraser.

Fraser's Progressive Policy also included $500,000 in uninsured/underinsured motorist coverage ("UM/UIM") with liability limits of $500,000 per person and $500,000 per accident. Fraser was also a named insured for UM/UIM coverage under Universal Policy No. 9205895 because she was occupying a covered auto. The Universal Policy included UM/UIM policy limits of $50,000 person/$100,000 per accident. Fraser was also a named insured under Concord's Personal Auto Policy No. B032000. The Concord Policy included UM/UIM coverage with liability limits of $300,000 for each occurrence.

The Progressive Policy's UM/UIM endorsement defines an "underinsured auto" as "a motor vehicle . . . for which the amount paid under all liability policies . . . is less than the sum of the limit of insurance for uninsured motorists coverage applicable to the insured under this policy and the

---

claims for misrepresentation, bad faith, and consumer fraud because of Progressive's change in stance. These new claims are not addressed in this Report and Recommendation.

3

limit of insurance applicable to the insured under any other policy." The Progresssive Policy's UM/UIM endorsement states: "With respect to damages resulting from an accident with an underinsured auto, the limit of liability is reduced by all sums paid by or for anyone legally responsible, including amounts paid under this Policy's Part I - Liability of Others coverage". The endorsement also provides: "No one will be entitled to receive duplicate payments for damages under this policy and any liability or medical payments coverage."

The Concord UM/UIM endorsement defines an underinsured auto as a motor vehicle "To which a liability . . . policy applies at the time of the accident but its limit of liability is less than the sum of the limits of liability applicable to the 'insured' for Uninsured Motorists Coverage under this policy or any other policy." The Concord UM/UIM also provided under the "Limit of Liability" section: "With respect to damages caused by an accident with [an underinsured vehicle], the limit of liability for this coverage shall be reduced by all sums paid because of the 'bodily injury' ... by or behalf of persons or organizations who may be legally responsible . . . ." This section also

provided: "No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and Part A. Or Part B. of this policy".

Fraser, Progressive, and Concord have each filed motions for summary judgment. Progressive claims that its payments to Finke were for the liable party (Tucker) who was insured under Fraser's Progressive Policy and therefore they should be deducted from Progressive's UM/UIM coverage amounts. Fraser and Concord contend that Progressive's liability payments do not diminish the amounts available under Progressive's UM/UIM coverage.

## II. Discussion

Summary judgment is proper when there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. <u>Richardson v. Selsky</u>, 5 F.3d 616, 621 (2d Cir. 1993). All parties in this case have agreed to the material facts. The dispute arises over damages. Because there are no material facts in dispute, summary judgment is proper.

"Insurance contracts must be interpreted according to their terms and the evident intent of the parties, as gathered from the contract language." <u>Sanders v. St. Paul</u>

Mercury Ins. Co., 148 Vt. 496, 500 (1987). All policy terms of an insurance policy are enforceable unless prohibited by statute or public policy. State Farm Mutual Auto Ins. Co. v. Powers, 169 Vt. 230, 236 (1999). "No policy can be issued which reduces the amount of coverage mandated by statute." Sanders, 148 Vt. at 499. The parties agree that Fraser can "stack"[3] the insurance policies as allowed by Vermont law. Because of the stacking of the UM/UIM policies, the parties agree that Tucker is underinsured; Tucker's liability coverage is only $550,000, which is $300,000 less than the combined UM/UIM policies available to Fraser. The parties also agree that Progressive is the primary insurance provider while Concord and UU are co-excess insurers. Progressive claims that, while its UM/UIM policy is available, it has been exhausted because it has already paid $500,000 for the liable party (Tucker).

Vermont law requires all liability insurance policies to provide coverage for insureds who are legally entitled to recover damages from owners of uninsured/underinsured vehicles. See Vt. STAT. ANN. Tit. 23, § 941(a)(1999) The

---

[3] "Stacking" refers to the ability of the insured, when covered by more than one insurance policy, to obtain benefits from a second policy on the same claim when recovery from the first policy would be inadequate." Monteith v. Jefferson Ins. Co. of New York, 159 Vt. 378, 383 n.2 (1992).

purpose of the statute is to place "'the insured in the same position that he would have been in had the tortfeasor carried liability insurance in the amount of the insured's underinsured motorist policy limit.'" Webb v. U.S. Fidelity & Guaranty Co., 158 Vt. 137, 141 (1992)(quoting North River Ins. Co. V. Tabor, 934 F.2d 461, 464 (3rd Cir. 1991)). The statute is remedial and is to be construed liberally in favor of the insured. Goodrich v. Lumbermens Mutual Casualty Co., 423 F. Supp. 838, 842 (D.Vt. 1976).

UM/UIM coverage applies "whenever the tortfeasor has no insurance coverage or has insufficient coverage" as defined in the statute. Webb at 64. In order to recover under UM/UIM coverage, a policyholder must establish liability of the uninsured/underinsured motorist and his damages. Rhault v. Tsagarakos, 361 F. Supp. 202, 206 (D.Vt. 1973). It then becomes the duty of the UM/UIM coverage carrier to "provide [UIM] coverage, up to the policy limits provided, for the portion of the plaintiffs' total judgment that remained unsatisfied by their recovery from other sources." Muir v. Hartford Accident & Indem. Co., 147 Vt. 590, 594 (1987). The statute provides for a reduction in payments under such coverage by any amount recovered from the underinsured

7

motorist, see Rhault, 361 F. Supp. at 206 n.2; Muir, 147 Vt. at 594, or for payments made to the insured when the insured's recovery from all sources exceeds his or her damages. See Bradley v. H.A. Manosh Corp., 157 Vt. 477, 485-486 (1991).

Progressive's UM/UIM policy reduces the UM/UIM coverage limit by "all sums paid by or for anyone legally responsible," including amounts paid under the liability coverage. Progressive has paid $500,000 in liability coverage on behalf of Tucker, who is insured under Fraser's policy. While the policy states that any payments made to or on behalf of the insured can be deducted from the UM/UIM policy limits, it is counterintuitive to allow Progressive to deduct the $500,000 from the UM/UIM policy when Fraser did not receive any benefit. If an insured purchases UM/UIM coverage, she can reasonably expect that she will receive the benefit. Here, Fraser has not received any benefit from Progressive's UM/UIM coverage. While Progressive has paid $500,000 on behalf of the liable party, the payment was made to Finke, and the tortfeasor was Tucker, not Fraser.

The provision in the UM/UIM section of the Progressive Policy reducing the coverage amount by "all sums paid by or

for anyone legally responsible" does not absolve Progressive of it duty to pay Fraser.  This provision is clearly intended to prevent Fraser from receiving duplicate payments from the tortfeasor as well as from her UM/UIM coverage under the Progressive Policy.  Since Fraser has received $43,650 from the tortfeasor (Tucker), that amount must be deducted from Progressive's UM/UIM coverage amount.  Fraser bargained for and paid a separate premium for Progressive's UM/UIM and she is entitled to the benefit for premium.  The fact that Progressive has exhausted its liability coverage under the Policy to another injured party does not entitle Progressive to eliminate its obligation to Fraser under the UM/UIM coverage.

In a similar case, the Washington Superior Court ruled that the UM/UIM coverage was still available even after $300,000 of the policy was distributed to other parties. See Allstate Insurance Company v. Parke, 6 Vt. Trial Ct. Rptr. 173 (2001).  Liability under the UM/UIM policy was "reduced by all amounts paid by or on behalf of the owner or operator of the underinsured motor vehicle."  Id. at 174.  The court believed that "any purchaser would reasonably expect that his coverage limit would be reduced only by the

amount he actually recovers from the underinsured motorist's insurer . . . ." Id. While the issue in the case was whether the UM/UIM limit was $200,000 (the difference between the UM/UIM policy limit and the underinsured limit) or $500,000, the court indicated that the full UM/UIM coverage should be available. The insured in both cases did not benefit from the liability policy: the insured was not liable and the insured did not receive payment. Because the insured has paid for UM/UIM coverage, the insured should have the benefits of the policy.

Progressive's reliance on State Farm Mutual Auto Ins. Co. v. Powers, 732 Vt. 230 (1999), is misplaced. In Powers, the injured motorist received payment from the underinsured motorist's insurance company, and the primary insurance company received an offset because of this payment. Id. at 232. The issue before the court in Powers was "whether insurers may designate their UM coverage as primary or excess relative to other insurers providing such coverage, thereby establishing the order of payment among the insurers." Powers, 169 Vt. at 232. The court concluded that such policy provisions are sound and, more relevant to the present case, offered insight into how offsets function

10

to reduce the sums payable by a claimant's several insurance carriers.

The court recognized that because "an insurer's liability is controlled by its policy provisions," it will heed any sections designating the primary and excess carriers so long as they do not disadvantage the policyholder. Id. at 236. The court further noted the " generally accepted position" that "'the insurer of a vehicle involved in a collision has primary coverage for the passengers of that vehicle . . . .'" Id. (quoting Elrod v. General Cas. Co. of Wisconsin, 566 N.W.2d 482, 486 ( S.D. 1997)). Significantly, the court determined that in the majority of courts "the insurer providing primary UM coverage is entitled to offset its liability with any payment obtained from the tortfeasor." Id. at 240. Finally, in dictum closely paralleling the facts of this case, the court observed that allowing an insurer "to offset the entire [amount] against its primary UM coverage, which would in effect reduce its obligation to zero," would not violate established policy on "stacking"[3 "'Stacking' refers to the ability of the insured, when covered by more than one insurance policy, to obtain benefits from a second policy on

the same claim when recovery from the first policy would be inadequate." Monteith v. Jefferson Ins. Co. of New York, 159 Vt. 378, 383 n.2 (1992).]3 or otherwise reduce UM coverage available to a claimant. Id. at 241. Nevertheless the court in Powers decided that the primary insurer was entitled to only a pro rata share of the offset solely on the basis of the carrier's "other insurance" provision, which stated that any amounts paid by any liable party "will be apportioned pro rata to offset all available limits of Uninsured Motorist coverage." Id. at 241-242. Indeed the court suggested that this explicit policy language, coupled with the insurer's position throughout the proceedings in support of pro rata apportionment, required a pro rata offset. The issue in Powers was whether Nationwide Insurance Company was the primary insurance provider and would thus be responsible for payment. Id. at 234. The primary insurer would have received the full offset of payments made by the underinsured driver's insurance company, except the policy language gave pro rata shares to the other insurers. Id. at 241-242. Here, the parties agree that Progressive is the primary insurer. Powers did not decide whether the $500,000 paid by the primary

12

liability insurer on behalf of the tortfeasor should reduce the amount available under its UM/UIM coverage, not to a non-tortfeasor who is a named insured under the same policy.

This leads to the following result. Progressive is clearly entitled to offset $43,650 paid by Universal and AIG to Fraser. Since it is agreed that Progressive's UM/UIM coverage is primary, Concord and UU are co-excess UM/UIM insurers. Fraser must exhaust Progressive's UM/UIM coverage before impacting the co-excess insurers coverages.

Concord contends that if the Court finds Progressive's UM/UIM policy not available because it has exhausted its limits, Fraser is not eligible for UM/UIM coverage under Concord's (or UU's) policy because the total amount of UM/UIM coverage ($350,000) available would be less than Tucker's liability coverage ($550,000). The argument is moot, however, because Progressive's UM/UIM coverage is available.

### III. Conclusion

For the foregoing reasons I recommend that Defendant Progressive's Motion for Summary Judgment be DENIED. I further recommend that Plaintiff Mary Fraser's Motion for

Summary Judgment be GRANTED. I further recommend that Defendant Concord's Motion for Summary Judgment be GRANTED. Progressive is not entitled to offset its UM/UIM coverage with payments made under the liability portion of the policy. The $500,000 UM/UIM coverage is available, less $43,650 already paid to Fraser.

Dated at Burlington, in the District of Vermont, this 20th day of August, 2008.

/s/ Jerome J. Niedermeier
Jerome J. Niedermeier
United States Magistrate Judge

Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. Failure to file objections within the specified time waives the right to appeal the District Court's order. See Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).