```
                    UNITED STATES DISTRICT COURT
                              FOR THE
                       DISTRICT OF VERMONT
```

MARY FRASER,                              :
                                          :
        Plaintiff,                  :
                                          :
        v.                          :       Case No. 2:06-cv-210
                                          :
CONCORD GENERAL MUTUAL INSURANCE          :
COMPANY, PROGRESSIVE CASUALTY             :
INSURANCE CO., UNIVERSAL                  :
UNDERWRITERS INSURANCE COMPANY,           :
                                          :
        Defendants.                 :

## **OPINION and ORDER**

In this dispute over underinsured motorist coverage, Plaintiff Mary Fraser, Defendant Concord General Mutual Insurance Company ("Concord"), and Defendant Progressive Casualty Insurance Co. ("Progressive") have cross-moved for summary judgment. The Magistrate Judge issued his Report and Recommendation on August 20, 2008, recommending that Fraser's motion for partial summary judgment be granted, that Concord's motion for summary judgment be granted, and that Progressive's motions for summary judgment be denied. Progressive filed a timely objection to the Report and Recommendation.

Pursuant to 28 U.S.C. § 636(b), a district court makes a de novo determination of those portions of the report or recommendations to which objection is made. The court may accept, reject, or modify, in whole or in part, the magistrate judge's recommendations, or it may recommit the matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1)(C).

After de novo review of the record and the submissions of the parties, the recommendations are not accepted. For the reasons set forth below, all motions are **denied.**

## Factual Background

The material facts are not in dispute. Fraser was injured in a two-vehicle collision in Bridport, Vermont on July 7, 2002. At the time of the accident Fraser was a passenger in a 2002 Dodge pickup truck owned by Foster Motors, Inc. ("Foster Motors") of Middlebury, Vermont. The truck was operated by Fraser's employee, Dale Tucker. Foster Motors had loaned the vehicle to Fraser while her 1998 Dodge pickup truck was being repaired. Richard Finke and Robert Ray, occupants of the second vehicle, were also injured in the accident.

Tucker was at fault for the accident, which occurred when Tucker drove the truck left of the center line of the highway and collided with the car occupied by Finke and Ray. At the time of the accident Tucker had liability insurance available to him in the following amounts under the following policies:

- $500,000.00 per person and per accident under Fraser's Progressive Commercial Auto Policy No. CA 0-17-65-393-0;

- $25,000.00 per person and $50,000.00 per accident under Foster Motors' Universal Underwriters Insurance Co. ("UU") Commercial Auto Policy No. 9205895; and

- $25,000.00 per person and $50,000.00 per accident under Tucker's American International Group, Inc. ("AIG") Insurance Policy No. AIG 7406630.

2

Progressive paid the limits of its policy to Finke, after seeking and receiving consent from Fraser.[1] UU paid the limits of its policy to Finke in the amount of $25,000.00, Fraser in the amount of $18,650.00 and Ray in the amount of $6,350.00. AIG paid Fraser $25,000.00.

Fraser was the named insured under the Progressive policy. The policy included uninsured/underinsured ("UM/UIM") insurance coverage with limits of $500,000.00 per person and $500,000.00 per accident. According to the terms of the Progressive policy's UM/UIM endorsement, an "uninsured auto" included an "underinsured auto," defined as a motor vehicle "for which the amount paid under all liability policies . . . is less than the sum of the limit of insurance for uninsured motorists coverage applicable to the insured under this policy and the limit of insurance applicable to the insured under any other policy." (Doc. 46, Ex. I at 41.) The Progressive UM/UIM endorsement also included a section entitled "Limits of Liability," which stated that

> [r]egardless of the number of insured autos described in the Declarations, insureds, premiums paid, claims made or autos involved in the accident, the most we

---

[1] In an exchange of letters between Progressive and Fraser's attorney, Progressive confirmed that Progressive, UU and Concord had agreed to provide uninsured motorist coverage to Fraser in a total amount of $850,000.00, and sought and received consent to settle Finke's claim up to the liability limits of the Progressive policy. (Doc. 50, Ex. 3, 4.) Fraser has amended her complaint to assert claims of misrepresentation, bad faith and consumer fraud against Progressive in connection with these communications. (Doc. 79.)

3

>     will pay for all damages from any one accident . . .
>     for bodily injury is the limit of uninsured motorists
>     coverage shown in the Declarations. . . . With respect
>     to damages resulting from an accident with an
>     underinsured auto, the limit of liability is reduced by
>     all sums paid by or for anyone legally responsible,
>     including amounts paid under this policy's Part I -
>     Liability to Others coverage.

(Doc. 46, Ex. I at 43.)

Fraser was also an insured for purposes of UM/UIM coverage on the UU policy, because she was "occupying a covered auto" at the time of the accident. The UU policy had UM/UIM limits of $50,000.00 per person and $100,000.00 per accident. The UU policy's UM/UIM coverage defined an "uninsured motor vehicle" as one "which, at the time of the accident, was not insured . . . in at least the amount required by the applicable law where a covered auto is principally garaged." (Doc. 46, Ex. F at 49.) Regarding limits of liability it stated:

>     Regardless of the number of covered autos, insureds,
>     premiums paid, claims made or vehicles involved in the
>     accident, the most we will pay for all damages
>     resulting from one accident . . . for bodily injury is
>     the limit of uninsured motorists coverage shown in the
>     declarations. . . . With respect to damages resulting
>     from an accident with [an underinsured vehicle], the
>     most we will pay shall be reduced by all sums paid by
>     or for anyone who is legally responsible, including all
>     sums paid under this Coverage Part's liability
>     coverage.

(Doc. 46, Ex. F at 2-E.)

Fraser was also the named insured under her Personal Auto Policy No. B032000 with Concord. The Concord policy had UM/UIM limits of $300,000.00 for each occurrence. The Concord policy's

4

uninsured motorists coverage similarly defined an "uninsured motor vehicle" as including one "[t]o which a . . . policy applies at the time of the accident but its limit of liability is less than the sum of the limits of liability applicable to the "insured" for Uninsured Motorists Coverage under this policy or any other policy." (Doc. 46, Ex. J, Insuring Agreement ¶ D.2.) Its "Limit of Liability" section stated:

> A. The limit of bodily injury liability shown in the Declarations for each person for Uninsured Motorist Coverage is our maximum limit of liability for all damages . . . arising out of "bodily injury" sustained by any one person in any one accident. Subject to this limit of each person, the limit of bodily injury liability shown in the Declarations for each accident for Uninsured Motorists Coverage is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident. . . . Our maximum limit of the most we will pay, regardless of the number of 1) "insureds;" 2)claims made; 3) vehicles or premiums shown in the Declarations; or 4) vehicles involved in the accident.
>
> B. With respect to damages caused by an accident with a[n underinsured vehicle], the limit of liability for this coverage shall be reduced by all sums paid because of the "bodily injury" . . . by or on behalf of persons or organizations who may be legally responsible.

(Doc. 46, Ex. J, Limit of Liability ¶¶ A, B.)

Concord, Progressive and Fraser have each filed motions for summary judgment (Docs. 39, 45 & 49). The gist of their dispute is whether or not Progressive is entitled to offset its liability payment to Finke on behalf of Tucker, the liable party, against the total amount of UM/UIM coverage available to Fraser to satisfy her claims. Progressive seeks a ruling that it is

5

entitled to the offset. Concord seeks a ruling that allowing an offset under these circumstances would violate provisions of Vermont's UM statute, Vt. Stat. Ann. tit. 23, § 941 (2007), or in the alternative that Tucker was not underinsured and therefore Fraser was not entitled to UM/UIM coverage at all. Fraser seeks a ruling that the amount available to satisfy her claims is the total UIM coverage of $850,000.00, without offset, minus only the $43,650.00 she has been paid on behalf of Tucker.[2]

**Discussion**

**I. Summary Judgment Standard**

Summary judgment is "'warranted upon a showing that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc.*, 473 F.3d 450, 455 (2d Cir. 2007) (quoting *Feingold v. New York*, 366 F.3d 138, 148 (2d Cir. 2004)); Fed. R. Civ. P. 56(c). "In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the moving party." *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 579 (2d Cir. 2006). "When parties have filed cross-motions for summary judgment, the court 'must evaluate each party's motion on its own merits, taking care

---

[2] The record does not reflect the amount of damages Fraser has actually incurred.

6

in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" *Bronx Household of Faith v. Board of Educ. of City of New York*, 492 F.3d 89, 96-97 (2d Cir. 2007) (quoting *Hotel Employees & Rest. Employees Union, Local 100 v. City of New York Dep't of Parks & Recreation*, 311 F.3d 534, 543 (2d Cir. 2002)).

## II. Discussion

Automobile insurance policy terms are enforceable unless prohibited by statute or public policy. *State Farm Mut. Auto Ins. Co. v. Powers*, 732 A.2d 730, 735 (Vt. 1999). All Vermont automobile insurance policies must include UM/UIM coverage. Vt. Stat. Ann. tit. 23, § 941(a) (2007). "The 'overriding purpose' of this UM/UIM requirement is to 'protect[] the insured from the misfortune of being involved in an accident with a financially irresponsible driver.'" *Hubbard v. Metro. Prop. & Cas. Ins. Co.*, 944 A.2d 891, 893 (Vt. 2007) (quoting *Feeley v. Allstate Ins. Co.*, 882 A.2d 1230, 1234 (Vt. 2005) (mem.)). Accordingly, "[n]o policy can be issued which reduces the amount of coverage mandated by statute." *Sanders v. St. Paul Mercury Ins. Co.*, 536 A.2d 914, 916 (Vt. 1987). By statute, a policy's limits of UM/UIM coverage must equal its limits of liability coverage, if the limits of liability coverage in the policy are greater than $50,000.00 for one person, unless the policyholder otherwise directs. Vt. Stat. Ann. tit. 23, § 941(c).

The Vermont Supreme Court has explained that Vermont requires UIM insurers to provide "gap coverage," "intended only to place the insured in the same position as if, at the time of the accident, the tortfeasor had liability coverage equal to the insured's UIM coverage." *Colwell v. Allstate Ins. Co.*, 819 A.2d 727, 732-33 (Vt. 2003); *accord Webb v. U.S. Fidelity & Guar. Co.*, 605 A.2d 1344, 1347 (Vt. 1992); *Brunet v. Am. Ins. Co.*, 660 F. Supp. 843, 848 (D. Vt. 1987) (UIM protection only applies to the amount by which the tortfeasor actually is underinsured). It contrasted Vermont's gap coverage with broader "excess coverage" statutes, "intended to indemnify injured insureds for all of their damages not compensated by the tortfeasor's coverage." *Colwell*, 819 A.2d at 732.

Under the statute in effect at the time of the accident, a motor vehicle is underinsured "to the extent that its personal injury limits of liability at the time of an accident are less than the limits of uninsured motorists coverage applicable to any injured party legally entitled to recover damages under said uninsured motorist coverage." Vt. Stat. Ann. tit. 23, § 941(f) (2002).[3] An injured party covered by multiple automobile

---

[3] The Vermont legislature amended the statute in 2005 to add that a motor vehicle is underinsured when "the available liability insurance has been reduced by payments to others injured in the accident to an amount less than the limits of the uninsured motorist coverage applicable to the insured." Vt. Stat. Ann. tit. 23, § 941(f)(2) (2007). Although the bill's statement of purpose referred to this amendment as a

8

insurance policies, such as Fraser, is entitled to "stack" the UIM limits of all applicable policies to determine whether the tortfeasor, Tucker, was underinsured. *Monteith v. Jefferson Ins. Co.*, 618 A.2d 488, 492 (Vt. 1992). The parties agree that Tucker was underinsured: his liability insurance at the time of the accident totaled $550,000.00, and the UM/UIM coverage on Fraser's stacked policies totaled $850,000.00. *See Derosier v. Pawtucket Mut. Ins. Co.*, 819 A.2d 739, 741 (Vt. 2003) (in multiple victim accident where single claimant seeks UIM coverage, per person rather than per accident limits are compared).

Fraser contends that she therefore has $850,000.00 in UIM coverage available to her, and that she is entitled to recover her damages up to that amount, less only what she has received in payments on behalf of the tortfeasor. All three policies however contain clauses which provide that amounts payable under UIM coverage will be reduced by amounts paid by or for the tortfeasor. At a minimum the effect of these clauses is to

---

clarification, H.R.79, 68th Sess. (Vt. 2005), the amendment might be construed as providing for "[a] variant of 'excess coverage' . . . requir[ing] insurers to provide UIM coverage to the extent that the amount actually available to the injured party from the tortfeasor's policy was less than the UIM coverage limits stated in the injured party's policy." *Colwell*, 819 A.2d at 732 (citing *Florestal v. Gov't Employees Ins. Co.*, 673 A.2d 474, 478-79 (Conn. 1996)); *but see Hubbard*, 944 A.2d at 893-94 (continuing, following the amendment to § 941(f), to refer to Vermont's UM/UIM requirement as filling the gap between the tortfeasor's available liability insurance and the UM/UIM protection purchased by the insured).

confirm that the policies provide "gap coverage" as required by Vermont law, not "excess coverage." *See Webb*, 605 A.2d at 1347-48 (such limit of liability policy provisions indicate that insurance is "gap," not "excess" coverage). Fraser's UIM coverage is intended to place her "in the same position as if, at the time of the accident, the tortfeasor had liability coverage equal to the insured's UIM coverage," *Colwell*, 819 A.2d at 732-33, "not . . . to increase the overall amount of recovery." *Hubbard*, 944 A.2d at 894.

At the time of the accident, Tucker had $550,000.00 of liability coverage compared with Fraser's $850,000.00 in UIM coverage. Had Fraser been the only injured victim of the accident, she would have been able to recover her damages up to a total of $850,000.00, by first recovering from the tortfeasor's liability insurance. The liability payment would have been deducted from any payment from her UIM coverage. Under those circumstances Fraser would undoubtedly agree that she had no claim on Progressive's full UIM policy limits of $500,000.00, but only the difference, the gap, between the tortfeasor's liability limits and the limits of her UIM coverage, or $300,000.00. *See Webb*, 605 A.2d at 1348 ("It is . . . axiomatic in underinsurance cases that the tortfeasor's insurer will pay some amount, and that amount, however small, will prevent the Limit of Liability ceiling from being reached. This result does not deprive the UM

insured of a promised benefit or in any way contravene law or public policy.").

At the time of Fraser's accident, Vermont's UIM statute did not address the problem of UIM benefits in multiple-victim accidents. *See Colwell*, 819 A.2d at 733. Unfortunately for Fraser's argument, neither the policy language nor the Vermont UIM statute provided for an adjustment in the amount of gap coverage according to the number of accident victims. Fraser's UIM coverage, regardless of the number of persons injured in the accident, equals $300,000.00, filling the "gap" between the tortfeasor's total liability coverage and the total UIM coverage. *See Hubbard*, 944 A.2d at 893 ("To serve this gap-filling purpose, the availability *and extent* of an UM/UIM award in the case of an accident with an underinsured tortfeasor is assessed relative to the liability limits of that tortfeasor.") (emphasis supplied). Fraser's Motion for Summary Judgment (Doc. 49) is therefore **denied**.

Next at issue is whether under the terms of its policy Progressive may reduce its UIM limit "by all sums paid by or for anyone legally responsible." (Doc. 46, Ex. I at 43.)

Insurance policies will be "construe[d] in accord with the reasonable expectations of the purchaser." *Coop. Fire Ins. Ass'n v. White Caps, Inc.*, 694 A.2d 34, 37 (Vt. 1997). Nevertheless, an insurer is entitled to "the protection of unambiguous terms

placed in the policy for its benefit." *Select Design, Ltd. v. Union Mut. Fire Ins. Co.*, 674 A.2d 798, 800 (Vt. 1996); *accord Fireman's Fund Ins. Co. v. CNA Ins. Co.*, 862 A.2d 251, 256 (Vt. 2004).

In its section entitled "Limits of Liability" Progressive's UM/UIM endorsement provides:

> Regardless of the number of insured autos . . . insureds, premiums paid, claims made or autos involved in the accident, the most we will pay for all damages from any one accident:
>     a.   for bodily injury is the limit of uninsured motorists coverage shown in the Declarations;
>     *   *   *
> With respect to damages resulting from an accident with an underinsured auto, the limit of liability is reduced by all sums paid by or for anyone legally responsible, including amounts paid under this policy's Part I – Liability to Others coverage.
>
> No one will be entitled to receive duplicate payments for damages under this policy and any liability or medical payments coverage.

(Doc. 46, Ex. I at 43.) Progressive argues that this policy language unambiguously states that the most it will pay for all damages from any one accident is the $500,000.00 UM/UIM policy limit; that this $500,000.00 liability is reduced by all sums paid on behalf of the tortfeasor, including sums Progressive paid under the liability portion of the policy; and that it will not duplicate liability or medical payments coverage.

Fraser argues that the policy language is ambiguous, in that it is susceptible of two interpretations: one, that the limit of liability is reduced only by amounts paid to the insured; or two,

12

that the limit of liability is reduced by amounts paid to anyone. She argues further that the second interpretation is "unreasonably literal" and violates her reasonable expectations. The express language at issue is entirely unambiguous, however. It does not limit the reduction to payments made only to the insured, but to "all sums paid."[4]

Concord for its part argues that this provision, when read together with the duplicate payments provision in the next paragraph, makes clear that the UM/UIM limits may only be reduced by liability payments made to the insured. Were that the case, however, the reducing clause would be superfluous, in that the duplicate payments provision would address any liability payments made to the insured. *See DeBartolo v. Underwriters at Lloyd's of London*, 925 A.2d 1018, 1024 (Vt. 2007) (declining to construe insurance policy provision narrowly, to avoid rendering another provision surplusage).

---

[4] *Saucier v. Allstate Ins. Co.*, 742 A.2d 482 (Me. 1999), cited by Fraser, is not to the contrary. In that case, the Supreme Judicial Court of Maine found no ambiguity in a UIM policy provision that provided that "'[d]amages payable will be reduced by . . . all amounts paid by the owner or operator of the uninsured auto or anyone else responsible,'" holding that the UIM carrier was only entitled to deduct amounts paid to the insured. *Id.* at 486. The provision construed in *Saucier* referred to "damages payable," that is, amounts that were available to an injured insured; it followed logically, therefore, that the reduction extended only to amounts paid to an injured insured. By contrast, the provision in question in this case purports to reduce the policy's UIM limit regardless of number of insureds, premiums paid or claims made.

13

Nevertheless, although the policy language is unambiguous on its own or in context, if the provision violates statute or public policy Progressive will not be entitled to its protection. *Powers*, 732 A.2d at 735.

Concord argues that the policy language violates sections 941(e) and (f) of Title 23. Section 941(e), which allows a UM/UIM carrier that has paid out under its policy to recover from any person legally responsible, is inapposite; Progressive has not made any payments under the UM/UIM portion of its policy, nor does it propose to, if its arguments succeed. Section 941(e) does not bar Progressive's reducing clause.

Similarly, Progressive's reducing clause does not violate section 941(f), which defines an underinsured motor vehicle by comparing policy limits at the time of the accident. The clause does not affect the tortfeasor's underinsured status, whatever it may attempt to accomplish once UM/UIM coverage is triggered, and liability payments have been made.

Fraser argues that the policy language violates section 941(c) of Title 23, because it would reduce her UIM coverage to zero. Section 941(c) requires that a policy's UM/UIM coverage equal its liability coverage unless the policyholder otherwise directs. Vt. Stat. Ann. tit. 23, § 941(c); *see also Sanders*, 536 A.2d at 916 ("No policy can be issued which reduces the amount of coverage mandated by statute.") In *Muir v. Hartford Accident &*

14

*Indemnity Co.*, the Vermont Supreme Court invalidated a similar policy provision that would have reduced a UM carrier's liability to zero. 522 A.2d 236, 238-39 (Vt. 1987).[5]

Reading the broad language of Progressive's provision literally to allow it to reduce its liability to zero based on payments made to anyone would appear to run afoul of the prohibition against reducing the amount of coverage mandated by statute. *See Powers*, 732 A.2d at 734 (quoting *Sanders*, 536 A.2d at 916). Progressive argues, however, that its sole purpose in this case is to establish the priority of coverage among Fraser's UIM insurers, and not to reduce her coverage limits. With this important concession, it is unnecessary to decide whether Progressive's reducing clause is enforceable in other circumstances.

The question then becomes whether Progressive, as Fraser's primary carrier,[6] is entitled to offset its UIM liability to Fraser with its personal injury liability payments to Finke on behalf of Tucker, the tortfeasor. UM/UIM insurers may designate

---

[5] In *Webb v. U.S. Fidelity & Guaranty*, however, the Vermont Supreme Court upheld a similar policy provision that entitled the UIM carrier to offset any amount *its insured* recovered from the liability carrier, concluding that this reduction from the UIM limits was consistent with Vermont's gap coverage provisions. 605 A.2d at 1348.

[6] The parties do not currently dispute that Progressive's UM/UIM insurance is primary.

15

their coverage as primary or excess relative to other insurers as long as they do not reduce an insured's total UIM coverage. *Powers*, 732 A.2d at 731, 734. As the primary insurer, Progressive must exhaust its policy limit before Fraser may resort to the coverage provided by her excess carriers, Concord and UU. *See id.* at 737. The Vermont Supreme Court has noted that "the majority of courts directly addressing the issue have concluded that the insurer providing primary UM coverage is entitled to offset its liability with any payment obtained from the tortfeasor." *Id.* at 737. As in *Powers*, permitting Progressive to set off payments made on behalf of the tortfeasor up to its UM/UIM limits would not reduce the $300,000.00 coverage available to Fraser. *Id.* at 738. Permitting Progressive to set off $500,000.00 of the $550,000.00 in payments on behalf of the tortfeasor would merely mean that its policy limit is exhausted, and that Fraser must look to the Concord and UU policies for UIM coverage.[7]

Fraser argues, however, that Progressive is estopped from

---

[7] It is by no means clear, however, that the Progressive policy's reducing clause may be interpreted as establishing its entitlement to a full $500,000.00 offset. Progressive's "Other Insurance" provision states that if there is other applicable underinsured motorists coverage, it will pay its share of the damages, meaning the proportion that its share of the liability bears to the total of all available coverage limits. (Doc. 46, Ex. I at 43.) It could be argued that this provision contemplates a proportional share of any offset as well as a proportional share of the damages.

asserting that it is entitled to set off the liability payment, or has waived the benefit of any reduction.[8]  Her argument rests on the contention that Progressive has contradicted its earlier assurance that its $500,000.00 of UIM coverage was available to her, and now refuses to provide coverage.  Progressive has not denied coverage; Fraser has gap coverage of $300,000.00 because stacking the Progressive, UU and Concord policies triggers UM/UIM coverage for her.  Without Progressive's UM/UIM coverage, Tucker would not be deemed underinsured.

Nevertheless, the issue of whether Progressive is estopped from asserting that its UM/UIM policy limits are exhausted cannot be resolved at summary judgment.

> To invoke the doctrine of equitable estoppel, a plaintiff must . . . show[]: (1) that the party to be estopped knew the facts; (2) that the party being estopped intended that its conduct would be acted upon; (3) that the party asserting estoppel was ignorant of the true facts; and (4) that the party asserting estoppel detrimentally relied on the other party's conduct.

*Lodge at Bolton Valley Condo. Ass'n v. Hamilton*, 905 A.2d 611, 614 (Vt. 2006) (mem.).  The doctrine "'seeks to promote fair dealing and good faith by preventing one party from asserting rights which may have existed against another party who in good

---

[8]  Waiver involves "the voluntary relinquishment of a known right," *Anderson v. Cooperative Ins. Cos.*, 895 A.2d 155, 159 (Vt. 2006), and may be express or implied.  The undisputed facts show that Progressive did not expressly or by implication waive any right to claim an offset or to debate priority of coverage among the UM/UIM carriers.

17

faith has changed his or her position in reliance upon earlier representations.'" *Id.* (quoting *Beecher v. Stratton Corp.*, 743 A.2d 1093, 1095 (Vt. 1999)).

Taking the facts in the light most favorable to Fraser, as a nonmoving party on the setoff issue, it is possible that Fraser will be able to show that she relied to her detriment on Progressive's assurance that its UIM coverage "would apply and provide coverage to Mary Fraser for her injuries," (Oct. 9, 2003 Letter (Doc. 50, Ex. 2)), reasonably believing that Progressive's statement meant that it would pay her if her injuries exceeded the amount of available liability coverage.

In addition, Progressive is not entitled to summary judgment because Fraser has amended her complaint to allege two additional counts against Progressive, for misrepresentation and bad faith and consumer fraud. Its motion for summary judgment (Doc. 45) is therefore **denied.**

Concord's motion for summary judgment (Doc. 39) is **denied** as well. Its first ground for summary judgment--that its coverage is excess--is moot. Its second ground--that it is entitled to summary judgment because Progressive's denial of coverage means Tucker was underinsured--has been most recently rejected in *Colwell*, which repeated that underinsured status is determined by comparing policy limits as they exist at the time of the accident. *Colwell*, 819 A.2d at 731; Vt. Stat. Ann. tit. 23, §

18

941(f).

For the reasons stated above, the motions for summary judgment (Docs. 39, 45 & 49) are **denied**.

Dated at Burlington, Vermont this 13th day of February, 2009.

<pre>
                            /s/ William K. Sessions III
                            William K. Sessions III
                            Chief Judge
</pre>